CASE No. 1113.

BANNISTER v. BULL.

1. The intention of testator, to be gathered from the paper itself, is the first and great object of inquiry in the construction of a will.

2. Where testator directed the balance of his estate, both real and personal, to be equally divided among his ten children, viz., "to my son, C., one equal part," and so on, naming eight in the same terms, and "to my daughter, J., one equal part during her natural life; after her death, to be equally divided among her children;" and the tenth share, in the same terms, to another daughter; the daughter J. took only a life-estate in the one-tenth part of this residuum, with a vested remainder to her children.

3. The words "balance of my estate," referred to what still remained of his own property, and the words "equally divided," referred to the size or quantity of his estate, and not to the manner, terms or conditions upon which the share was to be held.

4. In the devise to J., the word "children" means immediate offspring, and is a word of purchase. The rule in *Shelley's Case,* therefore, does not apply.

5. A purchaser from J., of lands acquired under this devise, could not hold adversely to the remaindermen until the life-estate terminated.

6. The fact that such purchaser held a bond of indemnity from the remaindermen's deceased father, whose estate in part had been received by them, does not estop them from recovering this land.

7. Two tenants-in-common may bring action against a stranger in possession of their land to recover their shares, without making the other co-tenants, holding a third share in the land, parties to the action. But the verdict should be for only the aliquot parts of the plaintiffs, even though the other tenants are before the court as defendants; and if the verdict is for the whole land, a new trial must be granted, as the court has no power to change such a verdict.

8. Where an interest in remainder in land vested in a married woman before the adoption of the constitution of 1868, her husband is a necessary party to an action brought by her for its recovery after the death of the life-tenant in 1874.

Before MACKEY, J., Orangeburg, January, 1881.

Action commenced September 6th, 1879, by Martha J. Bannister and Edward F. Reese against William H. Bull, William Fogle, Stephen Bannister, A. Z. Bannister and C. U. Bannister, for the recovery of a tract of land.

The plaintiffs and the defendant, W. H. Bull, both claimed title under the residuary clause of the will of Adam Shuler. It read as follows:

"The balance of my estate, both real and personal, I will and desire after my death to be equally divided among my ten children, viz., to my son Charles P., one equal share; my son Alexander, one equal part; my son Jacob F., one equal part; to my son Bennet, one equal part; my son Edward Y., one equal part; my son Willis, one equal part; my daughter Eliza, one equal part; my daughter Jennet, one equal part during her natural life, after her death to be equally divided among her children; my daughter Relvey, one equal part during her natural life, after her death to be equally divided among her children; my daughter Mahalah, one equal part. I have loaned to my son, Charles P., two negroes, namely, William and Birty, and to my son, Bennet, one negro named Gabriel. These negroes I will and desire to be divided among ten children above-mentioned and in the above-mentioned manner."

Jennet (Mrs. Reese) died in 1874 or 1875. Her husband, John Reese, died in 1857. Other facts are stated in the opinion of this court.

The exceptions correctly state so much of the requests to charge, and of the charge to the jury, as is necessary to a full understanding of the points decided. They were as follows:

The defendant, William H. Bull, hereby gives notice that he excepts to the rulings of his Honor, T. J. Mackey, presiding judge of the said court, at the session thereof holden in January, 1881, made in the action above entitled, as follows:

1. Because he overruled the demurrer of the said William H. Bull.

2. Because, being requested by this defendant's counsel to charge "that under the will of Adam Shuler, his daughter Jennet Reese took a fee-conditional and not a life-estate, and that the children of Jennet Reese would take by limitation and not by purchase," he declined so to charge.

3. Because, being requested in like manner to charge "that if the jury believe from the evidence that Bennet Shuler occupied the tract in dispute adversely to Jennet Reese for more than ten years, their verdict must be for the defendant, William H. Bull," he declined so to charge.

4. Because, being requested in like manner to charge "that if the jury believe from the evidence that the plaintiffs, as heirs of John U. Reese, received estates greater in value than the land in dispute from him as his heirs-at-law, then they are estopped by his deed, and the verdict must be for the defendant, William H. Bull," he declined so to charge.

5. Because, being in like manner requested to charge "that a verdict cannot be found in favor of the defendants, Stephen Bannister, Charles U. Bannister and Altamont Z. Bannister," he declined so to charge.

6. Because, being in like manner requested to charge "that if a verdict be found in favor of the plaintiffs, it can only be for their *aliquot* part of the lands, not exceeding two-thirds thereof," he declined so to charge.

7. Because, being in like manner requested to charge "that as

to damages, if the verdict be for only two-thirds, the remaining one-third remaining in the defendant, William H. Bull, because not demanded by action, no damages· can be recovered, except rents actually received and not rental value, and then only if W. H. Bull occupied all the land," he refused so to charge, and, on the contrary, charged the jury that the measure of damages is the rental value of the land in all cases.

8. Because, being in like manner requested to charge "that there is no testimony as to the rent actually received," he declined so to charge.

9. Because, being in like manner requested to charge "that if the jury believe from the evidence that the defendant, William H. Bull, has never occupied the part of the land in dispute, assigned and admeasured to the widow of Bennet Shuler as her dower, verdict cannot be found for the plaintiffs for that portion, as no trespass was proven," he declined so to charge.

10. Because, being requested in like manner to charge "that if the court holds that the estate of Martha Jane Bannister, as a child of Jennet Reese, vested at the death of Adam Shuler, then Rousam Bannister, her husband, has an estate in the land and is a necessary party and entitled to the rents and profits in her share for at least her coveture with him as tenant by the courtesy," he declined so to charge, and, on the contrary, charged that Section 137 of the code settled this question; she died six years ago, which was after the adoption of the constitution, and under Section 8, Article XIV., thereof, she has the right to bring an action and be sued as a married woman.

11. Because, being requested in like manner to charge "that if the court holds that the estate of Martha Jane Bannister was devised directly under the will. of Adam Shuler, then Rousam Bannister has an estate in the land, and is a necessary party, during coveture being entitled to her share of rents and profits," he declined so to charge, and, on the contrary, charged "that Martha Jane Bannister could bring this action without joining with her husband."

12. Because he instructed the jury that Jennet Reese took a life-estate under the residuary clause of Adam Shuler's will, and not a fee-conditional.

13. Because he declined to instruct the jury that the plaintiffs, as heirs of John U. Reese, receiving assets by descent, were estopped from disputing the title of Bennet Shuler and his assigns by their ancestor's deed to said Bennet Shuler.

14. Because he instructed the jury that they could find for the plaintiffs the whole of the land in dispute.

15. Because he instructed the jury that Jennet Reese could not divest the plaintiffs, her children, of their rights under the will of Adam Shuler.

16. Because he instructed the jury that if the will of Adam Shuler was recorded, such recording is ample notice to every party who proposes to deal with any portion of the estate to which the will relates.

17. Because his Honor refused the motion made by the defendant, William H. Bull, for a new trial of the said action.

*Messrs. W. J. DeTreville, J. F. Izlar* and *S. Dibble,* for appellants.

Under the residuary clause of Adam Shuler's will, his daughter, Jennet, took an estate in fee-conditional in his real estate. 3 *Mod.* 45 ; 6 *Id.* 109 ; 2 *P. Wms.* 524 ; 2 *McCord* 67 ; 3 *Rich. Eq.* 78. The particular intent must yield to the general. 1 *Burr.* 50 ; 5 *T. R.* 303 ; 7 *Id.* 531 ; 1 *East* 229 ; 2 *Wms. Ex.* 978 ; 1 *Barn. & Ald.* 137 ; 12 *East* 515 ; 9 *Ves.* 566 ; 1 *Rich.* 509. The rule in *Shelley's Case* applies. 2 *Jarm. Wills,* ch. 37, 39, 40 ; 2 *Barn. & Ad.* 1 ; 1 *Barn. & Ald.* 720 ; 6 *Coke* 17 ; 9 *Rich. Eq.* 67 ; 1 *Id.* 404 ; 4 *S. C.* 18. This would make it an estate tail, or, in this State, a fee-conditional. 2 *Bay* 397 ; 9 *Rich. Eq.* 549. W. H. Bull is entitled to the benefit of the title by adverse possession acquired from Bennet Shuler. *Cheves* 204 ; 1 *N. & McC.* 307 ; 2 *Brev.* 155. No recovery can be had against W. H. Bull of the part of the land in dispute embraced in the dower tract admeasured to the widow of Bennet Shuler, for he has never been in possession of it. 1 *McCord* 466 ; 2 *Bailey* 81. The plaintiffs cannot, in any event, recover more than two-thirds. 2 *Bay* 457 ; 1 *McCord* 161 ; 4 *Id.* 144. The plaintiffs are estopped, as they received from

their father an estate greater in value than the land here in dispute. *Big. Estop.* 269–294. M. J. Bannister, being a married woman, has no capacity to sue. *Pom. Rem.* §§ 200–209; 12 *N. Y.* 211; 101 *Mass.* 339; 11 *S. C.* 71.

*Messrs. Glover & Glover* and *M. I. Browning,* contra.

The demurrer was properly overruled. 10 *Rich.* 369; *Rules of Circuit Court, No.* 18; *Code Pro.* §§ 141, 142, 168, 199; 2 *Tillingh. & S. Pr. & Pl.* 148, 1077; *Wait's An. Code* 239a. As to second, third, twelfth, thirteenth and fifteenth exceptions—2 *McCord* 75; *Bailey Eq.* 351; 3 *Rich. Eq.* 559; 2 *Jarm. Wills* 315, 344, 401, 406; 2 *Blacks. Com.* 110. Fifth exception—*Code* §§ 285, 298; 25 *N. Y.* 266; 2 *Tillingh. & S. Pr. & Pl.* 689 *et seq.*; 19 *N. Y.* 440; *Pom. Rem.* § 757. Sixth and seventh exceptions—2 *McCord Ch.* 440; 1 *Hill Ch.* 322; 2 *Tillingh. & S. Pr. & Pl.* 915; 11 *S. C.* 349; 6 *Paige* 273; 2 *Bailey* 215. Ninth exception—2 *Bay* 421; 11 *Rich.* 24; *Wait's An. Code* 794. Tenth and eleventh exceptions—*Code* § 137; 12 *S. C.* 592; *Wait's An. Code* 128; 1 *Tillingh. & S. Pr. & Pl.* 479; 7 *S. C.* 88; *Wells Mar. W.* §§ 42, 43, 71, 72. Sixteenth exception—see 9 *Rich. Eq.* 19; 6 *S. C.* 23.

November 17th, 1881. The opinion of the court was delivered by

McGOWAN, A. J. This was an action to recover a tract of land. Adam Shuler died in 1848, leaving a will, which contained the following residuary clause: "The balance of my estate, both real and personal, I will and desire after my death to be equally divided among my ten children, viz.: To my son, Charles P., one equal share" [naming them all in the same way. And as to his daughter, Jennet, the words are]: "*My daughter, Jennet, one equal part during her natural life; after her death to be equally divided among her children,*" &c. After the death of the testator his residuary estate was divided and the land in dispute was allotted to Jennet, who was then the wife of John Reese, and she and her husband duly conveyed it (1849) to her brother, Bennet Shuler, and Reese, the husband, in addi-

tion, gave Shuler a bond of indemnity to secure him as to title. Shuler held possession until he died, during the late war (about 1863). The assets of his estate were marshalled, and in 1870 the land was sold subject to the claim of his widow, Mary E., in a part of it for her dower. At that sale the land was purchased by the defendant, W. H. Bull, who claims the same. The defendant, Fogle, is his tenant.

Jennet Reese died about six years ago, leaving surviving her two children, Martha Jane Bannister, wife of Rousam Bannister, and Edward F. Reese, the plaintiffs, and two grandchildren, Altamont Z. Bannister and Charles U. Bannister, children of a deceased daughter, Margaret, who died after the death of the testator but before the death of Jennet, leaving also a husband, Stephen Bannister. These heirs of Margaret refused to join in the action as plaintiffs, and were made defendants. Stephen Bannister answered, echoing the prayer of the plaintiffs for relief, but the sons, Altamont and Charles, did not answer at all.

The defendant, Bull, demurred for want of necessary parties plaintiff: *First*, because Stephen, Altamont and Charles Bannister were not made plaintiffs, and, *second*, because Rousam Bannister, the husband of Martha Jane, should have been joined with her as plaintiff, and without him she had not capacity to sue. The demurrers were overruled, and Bull answered, claiming title to the land, and that he had made improvements upon it. The case was heard on the merits, and, under the rulings of the judge, the jury found for the plaintiffs the whole land in dispute. The defendant, Bull, appeals to this court. The exceptions are long and numerous, being seventeen in number, and we will not attempt to follow them *seriatim*, but to consider all the points which should properly be decided at this time.

The leading question in the case, made by exceptions 2, 3, 12, 13 and 15, is as to the rights of the parties under the will of Adam Shuler. The plaintiffs claim that the will gave a fee-simple to "the children" of Jennet, who were *in esse* at the time the will took effect, subject to a life-estate which was carved out for Jennet. That at the time of testator's death she had three

children, viz., Martha Jane Bannister, Edward F. Reese and Margaret Bannister, (the latter of whom died before the life-estate fell in six years ago, leaving surviving her a husband, Stephen, and two children, Altamont and Charles,) in whom the remainder vested, and upon the death of the life-tenant, each of the living children was entitled to one-third of the land, and the heirs of Margaret together were entitled to the other third. The defendant, Bull, insists that the terms of the will gave a fee-conditional to Jennet; that upon the performance of the condition in having children, the title of the land became absolute in her so far as to authorize her to alienate, which she did to him, and he has good title.

In the construction of wills, the first and great object of inquiry should be, What was the intention of the testator? That intention must be gathered from the paper itself, and some-times, from the inaccurate use of words which have a technical as distinguished from the ordinary meaning, there is difficulty in ascertaining the intention; but no such difficulty exists in this case. The word "estate" in the phrase "balance of my estate, both real and personal," manifestly referred to what still remained of *his own property* which he was about to give, and not to any of the parts to be given out of that residuum. So, too, in regard to the words "to be equally divided," reference was had to *the size* of the shares, and not to the terms or conditions which he might attach to any one of them. The word "equally," in its context, does not mean that the shares of the ten children were to be given and held *in the same manner*, but to be equal *in quantity*.

There is as little difficulty in regard to the word "children," the legal construction of which accords with its signification, namely, as designating the immediate offspring; for in all the cases in which it has been extended to a wider range of objects it was used synonymously with a word of larger import, as issue. 2 *Jarm.* 690, 5th Am. ed. The word indicates a class of persons, and not a line of indefinite descent, like "issue" or "heirs of the body." This is not a fee-conditional, for the reason that the land is not given to Jennet *and the heirs of her body*, but to her expressly *for life*. It is true that the rule in

*Shelley's Case* does apply in cases where the first taker has only an estate for life, but this is not a case for its application, for the reason that the land is given over to the "children," and not to *her issue* or *heirs of her body.* We understand that the rule in *Shelley's Case* applies only where the limitation over is to issue or heirs of the body. Chancellor Harper expressed it very clearly in the case of *Williams* v. *Foster*, 3 *Hill* 194, as follows: "By the rule in *Shelley's Case,* which has been an admitted and established rule of law for centuries, and the wisdom of which is more approved as it is better understood, it was determined that · if an estate of freehold be given to the ancestor, and a remainder be therein limited ʿto his *heirs or to the heirs of his body,* such remainder is immediately executed in possession in the ancestor so taking the freehold, and he takes an estate in fee or in tail, according to the terms of the limitation," &c. In this case an estate of freehold was given to the ancestor, but the remainder was not limited over to her *issue* or *heirs of her body,* but to "her children." There is nothing in the will which requires us to construe "children" as being equivalent to issue or "heirs of the body." It is a word of purchase, and they take *per formam doni,* and not by descent. *Shearman* v. *Angel, Bailey Eq.* 351 ; *McLure* v. *Young,* 3 *Rich. Eq.* 559.

It is true Jennet conveyed the land to Bennet Shuler, but she could convey no more than her life-estate, and her donee could not hold adversely to the remaindermen until their right to possession accrued at the death of the life-tenant. The children are not estopped by having received shares of the estate of their father, John Reese, whose bond of indemnity may, by possibility, make his estate liable over, but cannot affect their rights in the land. It was not error in the Circuit judge to hold that the plaintiffs are entitled to recover.

It is insisted, however, that the judge erred in overruling the demurrers for lack of necessary parties as plaintiffs The heirs of Margaret, to whom her vested third had descended, refused to join in the action as plaintiffs, and were thereupon made defendants. The demurrers made the point that such omission was fatal. That is to say, the proposition is that one tenant in common cannot sue for his interest in land without joining with

him in the action, as plaintiff or defendant, all who have a similar interest, and Section 142 of the Code of Procedure is relied upon to sustain it. That section is as follows: "Of the parties to the action, those *who are united in interest* must be joined as plaintiffs or defendants; but if the consent of any who should have been joined as plaintiff cannot be obtained, he may be made a defendant, the reason thereof being stated in the complaint; and where the question is one of a common or general interest of many persons, or where the parties are very numerous, and it may be impracticable to bring them all before the court, one or more may sue or defend for the whole."

The case before us does not fall within the operation of this section. This is not a suit to partition land among tenants in common, in which it might be necessary to have all the co-tenants before the court as plaintiffs or defendants in order to have a complete determination of the questions involved. But this is purely a legal action for the recovery of land—an action of trespass to try titles against a stranger. The last paragraph of the section cited, allowing "one or more to sue for the benefit of others," does not apply to such a case, but was manifestly intended for creditors of an insolvent estate and cases of that character where the interest is in common. So, also, as to the first paragraph in regard to making all parties *who are united in interest.* That does not control this case, for the reason that the interests of co-tenants are *not united.* They may be said, in one sense, to have a common interest, but according to our decided cases they are not, as against a stranger, *united in interest* in the sense of this section of the code. They have interests in the same property while it remains undivided, but such interests are distinct. Each has a right to the extent of his share. Indulgence is extended in allowing tenants-in-common to join in an action against a stranger, but they are not required to do so. "Tenants-in-common may sever, and any one of them may bring ejectment for his share, and, upon proof, recover it, or may bring ejectment for the whole, and, upon proof, recover his share." *Dorn* v. *Beasley*, 6 *Rich. Eq.* 420, in the late Court of Errors, where the authorities are cited.

The heirs of Margaret refused to join in the action, and we

know of no rule of law which authorizes the court to make parties sue for what may be supposed to be their rights, or to withhold their rights from those who *do sue*, only for the reason that others having similar interests in the same property do not join. They had the right to refuse to sue. They may wish to have a separate suit for their interest or they may not intend to set up their rights at all. It was not necessary that they should be joined either as plaintiffs or defendants to enable Martha Jane Bannister and Edward F. Reese, who did sue, to recover to the extent of their shares.

But we think Rousam Bannister should have joined his wife, Martha Jane, in bringing the action. At the time the constitution was adopted the interest of Martha Jane, under the will of Adam Shuler, had vested, and her husband's rights had attached, although she was not entitled to the possession until the death of the life-tenant, which occurred after the adoption of the constitution. That instrument did not operate retrospectively so as to divest the interest of the husband, which still remains and might be levied for his debts. *Bouknight* v. *Epting*, 11 *S. C.* 72.

The fifth and sixth exceptions state that the Circuit judge, upon being requested, refused to charge the following proposition, viz.: "That a verdict cannot be found in favor of the defendants, Stephen Bannister, Charles U. Bannister and Altamont Z. Bannister, and, if a verdict be found in favor of the plaintiffs, it can only be for their *aliquot parts* of the land, not exceeding two-thirds thereof."

We think the refusal of the judge so to charge was error. We have already seen that the parties named as defendants were not necessary parties in order to determine the rights of those who were plaintiffs, and those rights were in no way enlarged by the fact that these parties were named as defendants.

This was an action at law tried by a jury, and the plaintiffs could not recover more than they, in their own right, were entitled to, only because those who owned the remaining share were before the court as defendants. Nor, could these defendants, whose position was antagonistic, have an interest in the verdict recovered against the defendants, including themselves.

Sometimes a judge, sitting as a chancellor, under the flexible rules of equity, may decide the rights of all parties, plaintiffs and defendants, but, under the rigid rules of law, no such course is possible in reference to the verdict of a jury. The general verdict of a jury for the plaintiff must be taken to be what it purports to be, and not partly for some of the defendants. So far as it regards rights of property, the verdict is *a unity*, and the court cannot declare that it is in part for the plaintiffs and in part for the defendants. If the verdict were in money, in favor of the right party and against the proper defendants, the court might indirectly reduce *the amount* by granting a new trial *nisi*. But we do not see how anything of that kind can be done in this case. This is not a special verdict under Section 285 of the code, but a general verdict in behalf of the plaintiffs for the land in dispute, and, as it stands, is an entirety, either right or wrong. We cannot change its terms by ordering it to read *two-thirds* or one-third, instead of *the whole land in dispute;* nor, have we the right to declare that *one-third* of it is for those who were called in as defendants and do not ask it. Such practice, if followed, would make the record speak falsely and introduce confusion as to the rights of parties.

The judgment of this court is that the judgment of the Circuit Court be reversed and the case remanded for a new trial, with leave to apply to the Circuit Court for an order to amend by making Rousam Bannister a co-plaintiff with his wife, Martha Jane Bannister.

SIMPSON, C. J., and McIVER, A. J., concurred.